UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

AT LOUISVILLE

KIM V. CALLOWAY                                                                    PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:13-CV-00410-CRS

RODERICK BEASLEY, ET AL.                                    DEFENDANTS

**MEMORANDUM OPINION**

      I.       Introduction

Kim Calloway filed this action under 42 U.S.C. § 1983 against Louisville/Jefferson County Metro Government ("Louisville Metro"). Calloway also sued Louisville Metro Police Department ("LMPD") Officers Roderick Beasley, Steven Kelsey, Jorge Soto-Perez, and Clayton Reeves (together, the "Officers").[1]

Louisville Metro and the Officers moved for summary judgment. Mot. Summ. J., ECF No. 40-1. Calloway, proceeding *pro se*, asks this Court to deny summary judgment. Mem. Opp. Defs.' Mot. Summ. J., ECF No. 44.

For the reasons below, the Court will grant summary judgment to the Officers and Louisville Metro on all claims.

      II.      Summary Judgment Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] This Court has already dismissed Calloway's claims against Judge Katie King and the official capacity claims against the Officers. Order Oct. 9, 2013, ECF No. 5.

1

56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247 – 48.

III. Facts

On April 21, 2012, around 5:00 in the afternoon, Hamidah Hobson called 911. LMPD Officers Reeves, Soto-Perez, and Kelsey (together, the "Responding Officers") responded to 3306 Young Avenue in Louisville, Kentucky (the "home"). Audio 911 Call, ECF No. 40-3; Audio 911 Dispatch, ECF No. 40-3.

The dispatcher said that Hobson's "boyfriend was threatening her with a gun." Audio 911 Dispatch. The dispatcher gave Kim Calloway's name and description, said Calloway was possibly intoxicated, and a convicted felon. *Id.* The dispatcher also said there were narcotics and guns in the house, Hobson was screaming for Calloway to stop, and Calloway was possibly armed with a nine millimeter handgun. *Id.* Then, the dispatcher said Calloway also called 911 complaining that Hobson was kicking down his door from the outside porch. *Id.*

The Responding Officers arrived at the home. Soto-Perez and Reeves entered the home without a warrant and searched for guns, but they did not find any. Defs.' Resp. Interrog. 3, ECF No. 42. Officer Kelsey entered the home but did not conduct a search. *Id.* at 2. Beasley never arrived at the scene. *Id.*

After conducting an initial investigation at the scene, Reeves concluded that Calloway was the main aggressor. Arrest Report 2, ECF No. 40-4. Reeves noted in the police report that

2

Calloway struck Hobson with a fire iron on the buttocks. *Id.* Officer Reeves arrested Calloway for assault in the fourth degree. *Id.* at 1.

    IV.    <u>Officers' Qualified Immunity</u>

Section 1983 provides for liability against individuals who act under color of the state to deprive a citizen of federally guaranteed constitutional rights. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. Aug. 24, 2015).

    A.  <u>Principles of Qualified Immunity.</u>

The Officers argue that qualified immunity bars this suit against them in their individual capacities. Def.'s Mem. Supp. Mot. Summ. J. 8 – 10, ECF No. 40-1. The Court agrees.

Generally, a government official, including a police officer, is immune from civil liability while performing his/her discretionary functions. *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015). The official can only be liable if he/she violates the plaintiff's clearly established constitutional rights. *Id.* Once an official raises qualified immunity, the plaintiff has the burden of showing that qualified immunity does not apply. *Baynes*, 799 F.3d at 610. A plaintiff must demonstrate that the government official violated his or her constitutional rights to both establish a prima facie case for liability and to overcome a qualified immunity defense. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

The qualified immunity analysis has two inquiries. *Baynes*, 799 F.3d at 609 – 10; *see also*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that a district court may exercise its discretion as to which inquiry to address first). One inquiry addresses whether the facts, viewed in the light most favorable to the plaintiff, show that an officer's conduct violated the plaintiff's constitutional rights. *Baynes*, 799 F.3d at 610. If the Court concludes that no

constitutional violation occurred, it need not address the other inquiry, and the analysis ends. *Pearson*, 555 U.S. at 232.

Thus, the first, and in this case conclusive, issue is whether the Officers violated Calloway's constitutional rights. As discussed below, the Court will conclude that they did not violate Calloway's constitutional rights, and therefore, qualified immunity protects the Officers from suit.

B. Whether the warrantless search violated Calloway's constitutional rights.

Generally, the Court presumes that a warrantless search of a home is unreasonable and violates the Fourth Amendment. *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013). However, an exception to the warrant requirement exists for exigent circumstances. *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). Exigent circumstances "are situations where real immediate and serious consequences will certainly occur if the police officer postpones action to obtain a warrant." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (internal quotation marks omitted).

Exigent circumstances may arise where there is a risk of danger to the police or others. *Id.* "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The government has the burden to prove that the risk of serious injury to the officers or others justified the warrantless search. *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006). Although evidence of firearms does not by itself create an exigency, other factors, including "threats to an officer's safety," may be sufficient to justify a warrantless entry or search. *Gradisher v. City of Akron*, 794 F.3d 574, 584 (6th Cir. Jul. 24, 2015).

4

When the "underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law." *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992). The court of appeals has upheld the district court's grant of summary judgment based on findings of exigency when police enter homes without warrants in response to 911 calls. *See Stricker,* 710 F.3d at 360 (combination of 911 call soliciting help for drug overdose, police's independent knowledge and observations confirming the reported overdose, and attempts to block police from the potential overdose victim satisfied the exigency requirement); *Johnson v. City of Memphis*, 617 F.3d 864, 869 (6th Cir. 2010) (combination of 911 hang up call, unanswered return call, and open door satisfied the exigency requirement).

Here, viewing the facts in the light most favorable to Calloway, the risk of danger to both the Responding Officers and Hobson justified the warrantless entry into Calloway's home. The dispatcher relayed that Calloway was possibly armed with a 9 mm handgun, had threatened Hobson with a gun, was a convicted felon, possibly intoxicated, and that there were guns and drugs in the house. The dispatcher also said that Calloway had called 911.[2] Although the record is unclear as to which, if not all, of the Responding Officers heard the 911 dispatch, this is not a *genuine* issue of *material* fact. *See Anderson*, 477 U.S. at 247 – 48. The only reasonable inference, viewed in the light most favorable to Calloway, is that at least one, if not all, of the Responding Officers heard the dispatch.

The Responding Officers' actions when they arrived at the home show that at least one of them heard the dispatch because they immediately asked Calloway where the guns were. To find

---

[2] Louisville Metro and the Officers have not argued that Calloway's 911 call diminished the expectation of privacy he had in his home. *See Thacker*, 328 F.3d at 254 – 55 (when the plaintiff placed the 911 call, the plaintiff's expectation of privacy in the home was diminished).

otherwise, the factfinder would have to conclude that the Responding Officers just so happened to show up at the home within an hour of Hobson's 911 call. And, they just so happened to demand that Calloway show them where his guns were, without any knowledge of the 911 dispatch. The Court is mindful of its obligation on summary judgment to draw all inferences in favor of Calloway, but this obligation extends only to reasonable inferences. *See Moran, Al Basit, LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

Calloway argues that Hobson's 911 call was "false, prefabricated, and a lie." Pl.'s Resp. Def.'s Mot. Summ. J. 3, ECF No. 44. This is immaterial. "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002).

Based on what the dispatcher had said, it was reasonable for the Responding Officers to conclude that the lives of both themselves and Hobson were at risk. The need to find any potential weapons was great. Although Hobson was outside when the Responding Officers arrived, they reasonably believed that Calloway, who was still in the home, was armed and potentially dangerous. When they entered the home, the Responding Officers asked Calloway where the guns were and searched for them. The finder of fact could reach but one conclusion: exigent circumstances existed as a matter of law. *See Hancock*, 958 F.2d at 1375. The need to protect their own lives and Hobson from an individual described by the dispatcher as potentially armed and intoxicated justified the warrantless entry into Calloway's home as reasonable under the Fourth Amendment.

Viewed in the light most favorable to Calloway, Calloway has not shown that the Responding Officers' conduct violated his constitutional rights because the warrantless entry was

6

reasonable under the Fourth Amendment. Additionally, as Officer Beasley did not arrive on scene, Calloway has not shown that Beasley violated his constitutional rights by searching his home without a warrant. Without a constitutional violation, qualified immunity protects the Officers from suit. *See Pearson*, 555 U.S. at 232.

Calloway's Section 1983 claim based on the warrantless entry fails as a matter of law.

C.  Whether the warrantless arrest violated Calloway's constitutional rights.

An arrest without probable cause violates the Fourth Amendment. *Stricker*, 710 F.3d at 362. Whether probable cause to arrest exists is based on what the police officer knew at the time of the arrest. *Id.* The facts and circumstances must be sufficient for a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Id.*

Under Kentucky law, "a person is guilty of assault in the fourth degree when: (a) He intentionally or wantonly causes physical injury to another person; or (b) With recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." Ky. Rev. Stat. § 508.030.

Here, viewing the facts in the light most favorable to Calloway, Officer Reeves had probable cause to arrest Calloway for fourth-degree assault. Officer Reeves' police report provides Hobson's statements on scene. JC-3 Police Report 2, ECF No. 40-4. Hobson said that Calloway had forced her out of the house through the front door and threw her off the front porch. *Id.* The front door of the house showed visible damage. *Id.* at 1. Hobson also said that Calloway struck her with a fire iron across the buttocks. *Id.* at 2. The investigation revealed that Calloway was the main aggressor in the dispute with Hobson. *Id.* Hobson also had visible injuries, though she refused medical attention. *Id.* at 1. She complained of pain to her arms, legs, and buttocks, and had minor scrapes. *Id.*

7

Calloway argues that the arrest was unlawful because the judge dismissed the assault charge. Pl.'s Resp. 3. This is immaterial. An arrest supported by probable cause does not become invalid simply because the state eventually drops the charges. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004).

Based on what the dispatcher had said and the information gathered at the scene, probable cause existed to arrest Calloway for fourth-degree assault. The Responding Officers gathered information at the scene including Hobson's statements, visible injuries, and physical damage to the front door. This evidence is sufficient for a prudent person to believe that Calloway had intentionally or wantonly caused physical injury to Hobson, or with recklessness, caused physical injury to Hobson by means of the fire iron, a dangerous instrument. *See* Ky. Rev. Stat. § 508.030.

Viewed in the light most favorable to Calloway, Calloway has not shown the Responding Officers' conduct violated his constitutional rights because probable cause supported his arrest for assault in the fourth degree. Additionally, as Officer Beasley did not arrive on scene, Calloway has not shown that Beasley violated his constitutional rights by affecting a warrantless arrest. Without a constitutional violation, qualified immunity protects the Officers from suit. *See Pearson*, 555 U.S. at 232.

Calloway's Section 1983 claim based on the warrantless arrest fails as a matter of law.

V.  Louisville Metro's Municipal Liability

A municipality cannot be liable under Section 1983 for injuries inflicted solely by its employees or agents. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The municipality can only be liable for its own wrongdoing. *Baynes*, 799 F.3d at 620. The plaintiff

must establish that the government agent violated his/her constitutional rights. *Id.* Without an underlying unconstitutional act, a Section 1983 claim against a municipality fails. *Id.* at 622.

The Officers did not violate Calloway's constitutional rights. *See* discussion *supra* Part IV. Without an underlying unconstitutional act, Calloway's Section 1983 claim against Louisville Metro fails. *See Baynes*, 799 F.3d at 622.

Calloway's Section 1983 claim against Louisville Metro fails as a matter of law.

VI. <u>Conclusion</u>

For the reasons above, the Court will grant summary judgment to the Officers and Louisville Metro on all remaining claims. The Court will dismiss the claims against the Officers and Louisville Metro, without prejudice.

December 8, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

9